**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-40045

FELIPE DIAZ, ET AL.,

FELIPE DIAZ, ET AL.,

Plaintiffs,

Plaintiffs-Appellants,

versus

JAMES A. COLLINS,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

May 22, 1997

Before POLITZ, Chief Judge, DAVIS and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

Felipe Diaz, a Native American religious practitioner, appeals the dismissal of his civil rights suit challenging prison regulations restricting the length of his hair and the possession of certain sacred items. For the reasons assigned we affirm.

<u>Background</u>

Diaz is an inmate in the Coffield Unit of the Texas Department of Criminal Justice, Institutional Division, located in Anderson County, Texas. Because of his

membership in the Mexican Mafia prison gang Diaz is kept in Administrative Segregation and, other than for up to two hours a day to shower and recreate, he remains in solitary confinement. Diaz is a descendant of the Aztecs of Mexico and a follower of that tribe's religious teachings and practices.

In February of 1994 Diaz[1] filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 in which he challenged prison regulations restricting the length of his hair, the wearing of a headband, and the carrying of a medicine pouch.[2] In his complaint Diaz alleged that these restrictions imposed an impermissible burden on his ability to practice his religion insofar as they affected items and practices sacred to his faith. After conducting two hearings on the matter,[3] the magistrate judge, acting under authority of 28 U.S.C. § 636(c), entered a final judgment dismissing Diaz's lawsuit. Diaz timely appealed.

Analysis

Diaz filed a motion for the appointment of counsel which was denied by the

---

[1] Diaz's coplaintiff, Noah S. Martinez, removed himself from the suit prior to judgment being rendered.

[2] A number of additional claims originally lodged by Diaz, including the inability to utilize a sweat lodge and the prison system's requirement that he produce documented proof of his Native American ancestry, have been either abandoned by Diaz or satisfied by subsequent changes in administrative policy.

[3] See **Spears v. McCotter**, 766 F.2d 179 (5th Cir. 1985); **Flowers v. Phelps**, 956 F.2d 488 (5th Cir.), modified in part on other grounds, 964 F.2d 400 (5th Cir. 1992).

magistrate judge. Diaz now renews this request, seeking the appointment of appellate counsel and counsel upon remand, if required. Because we can glean no "extraordinary circumstances" which might warrant the appointment of appellate counsel in this case, we deny that request.[4]

Diaz contends on appeal that the magistrate judge erred in dismissing his free exercise challenge to the prison regulations.[5] Diaz's claims must be reviewed under the Religious Freedom Restoration Act of 1993, codified at 42 U.S.C. § 2000bb.[6] The RFRA is designed to augment the first and fourteenth amendment protection of the free exercise of religion. The act supplants the rational basis test formerly applied to determine the validity of laws of general applicability which incidentally impact religious practices and replaces it with the compelling interest test set forth in **Sherbert v. Verner**, 374 U.S. 398 (1963), and **Wisconsin v. Yoder**,

---

[4]**Cooper v. Sheriff, Lubbock County, Tex.**, 929 F.2d 1078 (5th Cir. 1991); **Branch v. Cole**, 686 F.2d 264 (5th Cir. 1982).

[5]Diaz also contends that the magistrate judge abused her discretion when she excluded the testimony of one of his witnesses, David Anguiano. Diaz did not object, however, to the magistrate judge's ruling prior to this appeal. It is our well-settled rule that "issues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice." **Varnado v. Lynaugh**, 920 F.2d 320, 321 (5th Cir. 1991) (citation omitted) (quotations omitted). Because our review of the record suggests no prospect of "manifest injustice," given that the testimony to be given by Anguiano was by Diaz's admission duplicative of his own, we decline to consider this issue.

[6]**Cheffer v. Reno**, 55 F.3d 1517 (11th Cir. 1995); **Werner v. McCotter**, 49 F.3d 1476 (10th Cir.), cert. denied, 115 S.Ct. 2625 (1995); **Besh v. Bradley**, 47 F.3d 1167 (6th Cir. 1995) (unpublished); **American Life League, Inc. v. Reno**, 47 F.3d 642 (4th Cir.), cert. denied, 116 S.Ct. 55 (1995); **Bryant v. Gomez**, 46 F.3d 948 (9th Cir. 1995); **Brown-El v. Harris**, 26 F.3d 68 (8th Cir. 1994).

3

406 U.S. 205 (1972).[7]

The RFRA "mandates that government shall not 'substantially burden a person's exercise of religion' unless the government demonstrates that the burden furthers a 'compelling governmental interest' by the 'least restrictive means.'"[8] The threshold inquiry under the RFRA is whether the challenged governmental action substantially burdens the exercise of religion.[9] "The burden of proving the existence of a substantial interference with the right of free exercise rests on the religious adherent."[10] If such a substantial burden is proven, it is then up to the government to demonstrate that the compelling interest test is satisfied.[11]

With regard to Diaz's arguments concerning his medicine pouch and headband, we agree with the magistrate judge's decision that Diaz failed to prove that the pertinent prison regulations substantially burden the exercise of his Native American religion. While "[a] prohibition against the possession of a medicine bag

---

[7] 42 U.S.C. § 2000bb(b); **Goodall by Goodall v. Stafford County School Board**, 60 F.3d 168 (4th Cir. 1995), cert. denied, 116 S.Ct. 706 (1996); **Werner**; **Bryant**; **Brown-El**. In so doing Congress intended to legislatively overrule United States Supreme Court decisions such as **Employment Div., Dep't of Human Resources v. Smith**, 494 U.S. 872 (1990), and **O'Lone v. Estate of Shabazz**, 482 U.S. 342 (1987). See **Goodall**; **Werner**.

[8] **American Life League** at 654 (quoting 42 U.S.C. § 2000bb-1). The RFRA applies to federal, state, and local governments. 42 U.S.C. § 2000bb-2(1).

[9] **Cheffer**; **American Life League**. We note in addition that under **Yoder**, Diaz was required to prove that his beliefs were both religious in nature and sincerely held. The record bears out the authenticity of Diaz's religious beliefs, and gives us, like the magistrate judge, no reason to question the sincerity of those beliefs.

[10] **Werner** at 1480 n.2, (citing **Bryant** at 948). See also **Sherbert**; **Goodall**.

[11] **Cheema v. Thompson**, 67 F.3d 883 (9th Cir. 1995); see also **Yoder**.

[or headband] could, for those faiths for whom the symbol has sufficient importance, qualify as a 'substantial burden' under the Act,"[12] this case does not involve a complete ban upon the possession of such sacred items. The pertinent prison regulations allow a Native American practitioner to possess a medicine pouch and headband while in his or her cell, prohibiting only the wearing of such items outside of the cell. Thus, given Diaz's Administrative Segregation status, the regulations only prevent him from wearing a medicine pouch or headband for up to two hours a day.

The record discloses that it is not necessarily a central tenet of Diaz's religion that a medicine pouch or headband be worn <u>at all times</u>.[13] Rather, the amount of time that a Native American practitioner must spend in physical contact with the medicine pouch is a highly subjective matter, dependent upon the degree to which the practitioner feels the need to be "connected" to the sacred items contained in the pouch. The headband serves a similar role, serving as a reminder to the practitioner of his tribal traditions and creed. Nothing in the record suggests that

---

[12]**Werner** at 1481. The record adequately bears out the importance of these items to Diaz's faith.

[13]The testimony of Glenda Taylor, Diaz's spiritual advisor and consultant to the TDCJ on Native American religious practices, indicates that the term "Native American religion" refers to a compilation of common religious practices arising out of a wide range of tribal traditions. In addition, Taylor's testimony also points out that many Native American religions exhibit an imported overlay of Christian symbolism. We recognize, therefore, that the importance of the medicine pouch in Diaz's Aztec religion may be greater or lesser than in other Native American religions. Despite this, we read the record mindful of the fact that it was Diaz's burden to establish the extent to which the prison regulations impacted <u>his</u> religious convictions.

Diaz's beliefs, however fervently held, compel him to wear a medicine pouch or headband at all times; thus Diaz has failed to demonstrate that the limited restrictions which these regulations impose upon him are a substantial burden upon his religious expression.[14]

We next consider the magistrate judge's ruling regarding the TDCJ's grooming code. Although this regulation survived a similar challenge in **Powell v. Estelle,**[15] the analysis there made relied upon the constitutional test set out in **O'Lone v. Estate of Shabazz**,[16] a test less exacting than the standard governing free exercise challenges under the RFRA.[17] **Powell** is therefore no longer dispositive precedent for sustaining the grooming requirement and we perforce must consider anew the legitimacy of this regulation.

The grooming regulation, given the strong significance of long hair in Native American belief,[18] legitimately may be deemed to work a substantial hardship upon

---

[14]Compare **Johnson v. Baker**, 67 F.3d 299 (6th Cir. 1995) (unpublished) (Nation of Islam Muslim's religious beliefs not substantially burdened by regulation which deprives him of particular time and place to observe his beliefs and the company of other Black Muslims); **Abdur-Rahman v. Michigan Dep't of Corrections**, 65 F.3d 489, 492 (6th Cir. 1995) ("Reasonable time, place, or manner restrictions upon communal religious gatherings do not necessitate the identification of a compelling state interest.").

[15] 959 F.2d 22 (5th Cir.), cert. denied, 506 U.S. 1025 (1992).

[16] 482 U.S. 342 (1987).

[17]See supra note 7 and accompanying text.

[18]The record reveals that the Native American custom regarding long hair, while in some part cultural, has strong religious implications. Hair is only supposed to be cut as a sign of grieving for the recently dead, and shorn locks are often placed with the deceased so that they may be carried into the afterlife. Diaz testified that

Diaz's practice of his faith. The magistrate judge found, however, that long hair also facilitates the transfer of contraband and weapons into and around TDCJ institutions. In addition, the magistrate judge found that requiring prisoners to have short hair makes it more difficult for escaped prisoners to alter their appearance from the photographs taken periodically of all TDCJ inmates. Based upon these findings, the magistrate judge concluded that the state's interests in promulgating and enforcing its grooming code were compelling, and that these interests could not be achieved without some sort of regulation limiting hair length.

We agree with our colleagues in the Eighth and Eleventh Circuits that a prison regulation on hair length is related to security and, as such, involves a compelling state interest.[19] Further, the security interest at stake cannot meaningfully be achieved appropriately by any different or lesser means than hair length standards. We perceive no constitutional infraction in such. Nor do we perceive any violation of the RFRA. It is our understanding that in enacting the RFRA, Congress intended to continue to extend substantial deference to prison officials in legitimate security matters. We find in the legislative history this significant passage:

> The committee [on the Judiciary] does not intend the act [RFRA] to impose a standard that would exacerbate the difficult and complex challenges of operating the Nation's prisons and jails in a safe and secure manner. Accordingly, the committee expects that the courts

---

his mother is currently old and not well, and that he wishes to maintain his long hair so that he may properly grieve for her when she passes away.

[19] **Harris v. Chapman**, 97 F.3d 499 (11th Cir. 1996); **Hamilton v. Schriro**, 74 F.3d 1545 (8th Cir. 1996).

will continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.[20]

For these reasons the judgment appealed is AFFIRMED.

---

[20] Sen. Rep. at 10, 1993 U.S.C.C.A.N. at 1899-1900 (footnote omitted).