IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2007

Charles R. Fulbruge III
Clerk

No. 06-10676

JUAN LONGORIA

Plaintiff-Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; JAMES DUKE,
Warden

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Juan Leonel Longoria, Texas prisoner # 711468, filed this pro se action against the Director of the Texas Department of Criminal Justice-Institutional Division (TDCJ-ID) and the Warden of the Robertson Unit, claiming his right to exercise his religion was denied when they denied him permission to grow his hair. Primarily at issue is whether, without requiring defendants to answer, the district court erred in dismissing Longoria's claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc et seq. AFFIRMED.

I.

The following facts were developed at the hearing for Longoria pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). He is of Mexican and Native American descent. He has resided in the Robertson Unit since May 1999 and is classified as a member of a security threat group (STG) called the Mexican Mafia, which he alleges he joined because of its members' interest in spirituality. Due to his STG status, Longoria cannot be housed with other Native American inmates. In May 2004, he requested permission to grow his hair because his great spirit told him not to mutilate his hair.

In January 2005, Longoria told prison officials, that, due to his religious beliefs, he would not cut his hair. In response to his grievance, Longoria was informed that the Chaplaincy Department could not authorize him an exemption to the grooming policy. According to Longoria, he was disciplined for violating the grooming policy, by which all inmates in the Robertson Unit are required to abide.

The district court granted Longoria leave to proceed in forma pauperis, and a magistrate judge conducted the Spears hearing. Without requiring defendants to answer, the district court dismissed Longoria's claim as frivolous and for failure to state a claim, citing 28 U.S.C. §§ 1915 (governing proceedings in forma pauperis), 1915A (governing screening of prisoner complaints against governmental entities), and 42 U.S.C. § 1997e(c) (governing dismissal of frivolous actions by prisoners). The district court granted Longoria permission to proceed in forma pauperis on appeal, which he pursues pro se.

II.

The dismissal of a complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) is reviewed for abuse of discretion. E.g., Harper v. Showers, 174 F.3d 716, 718 & n.3 (5th Cir. 1999) (citations omitted). On the other hand, dismissals under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and 42 U.S.C. 1997e(c)(1)

are reviewed de novo. See Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Black v. Warren, 134 F.3d 732, 733-34 (5th Cir. 1998). Because the district court referred to all of these statutes in dismissing Longoria's action, the issues at hand are reviewed de novo. See Velasquez v. Woods, 329 F.3d 420, 421 (5th Cir. 2003).

## A.

Longoria fails to contend defendants violated his rights under the Free Exercise Clause of the First Amendment. His brief provides only cursory reference to the First Amendment in the "Statement of Subject Matter Jurisdiction" and in the "Statement of the Proceedings", and these references merely refer to what he alleged in district court.

Although we liberally construe pro se briefs, such litigants must still brief contentions in order to preserve them. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993). This court "will not raise and discuss legal issues that [Longoria] has failed to assert". Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987) (citations omitted). Therefore, Longoria has abandoned any First Amendment claim. (In any event, our court has held the grooming policy challenged by Longoria not violative of the Free Exercise Clause. See Green v. Polunsky, 229 F.3d 486, 489-91 (5th Cir. 2000) (applying Turner v. Safley, 482 U.S. 78 (1987)); see also Taylor v. Johnson, 257 F.3d 470, 472 (5th Cir. 2001) (per curiam).)

## B.

As noted, Longoria maintains the district court erred in dismissing his claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). RLUIPA is not cited in Longoria's prisoner form complaint, which alleged a general violation of his "freedom to exercise [his] religious tenets in conformity with [his] religion" and his "right to practice [his] religion as a Mexica Nahua Native American". Complicating matters, the

recording for Longoria's Spears hearing is inaudible. Such hearings are conducted "to supplement the questionnaires sent to prisoners to elaborate on often less than artfully-drafted pleadings" and are akin to a FED. R. CIV. P. 12(e) motion for a more definite statement. Wilson v. Barrientos, 926 F.2d 480, 482 (5th Cir. 1991). Because the district court addressed claims by Longoria under RLUIPA in its order dismissing this action, we assume sufficient information was provided at the Spears hearing to constitute a RLUIPA claim's being made. See Longoria v. Dretke, No. 1:05-CV-161 (N.D. Tex. 3 May 2006).

Our court has not addressed whether the TDCJ-ID's grooming policy violates RLUIPA. See Thunderhorse v. Pierce, 232 F. App'x 425 (5th Cir. 2007) (per curiam) (unpublished) (vacating summary judgment without reaching merits because plaintiff not given notice and opportunity to respond to defendants' motion); Thompson v. Scott, 86 F. App'x. 17 (5th Cir. 2004) (per curiam) (unpublished) (vacating and remanding because plaintiff alleged his hair was within length allowed by policy). On the other hand, our court addressed the same grooming policy under the Religious Freedom Restoration Act (RFRA), RLUIPA's predecessor. Diaz v. Collins, 114 F.3d 69 (5th Cir. 1997). Because the test under the RLUIPA is sufficiently the same as that previously imposed under RFRA, we hold TDCJ-ID did not violate Longoria's rights by, pursuant to the grooming policy, denying him permission to grow his hair.

1.

The impetus for RFRA lies in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990). Smith involved a challenge, based on the Free Exercise Clause, to an Oregon law banning the use of peyote, with no exception for spiritual use of the substance. The Court held the Free Exercise Clause was not violated by neutral, generally applicable laws that incidentally burdened religion, absent the conjunction with another constitutional right. Id. at 881. The Court declined to apply the previous strict-

scrutiny test enunciated by Justice Brennan in Sherbert v. Verner, 374 U.S. 398 (1963), which required a plaintiff to show the law in question substantially burdened his religion; and, if such a burden existed, the law was valid only if it served a compelling state interest outweighing the degree to which the plaintiff's free-exercise rights were affected. Id. at 403-09.

In response to Smith, Congress enacted RFRA in 1993, which restored the Sherbert balancing test. Our court, in Diaz, 114 F.3d at 73, held the TDCJ-ID's grooming policy (as noted, the same policy at issue here) did not violate RFRA because it was related to security, it involved a compelling state interest, and the security interest at stake could not meaningfully be achieved by any different or lesser means. In so holding, our court noted: "[I]n enacting the RFRA, Congress intended to continue to extend substantial deference to prison officials in legitimate security matters". Id.

The Supreme Court, however, struck down RFRA in City of Boerne v. Flores, 521 U.S. 507, 532-36 (1997), holding: in enacting RFRA, Congress had exceeded its powers under section 5 of the Fourteenth Amendment. Congress responded by enacting RLUIPA, which is fundamentally the same as RFRA. To avoid the constitutional defect found in City of Boerne, however, RLUIPA's scope is limited to laws and regulations concerning land use and institutionalized persons. See Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004).

Cutter v. Wilkinson, 544 U.S. 709, 720 (2005), examined, and unanimously upheld, the constitutionality of RLUIPA as a permissive accommodation of religion not barred by the Establishment Clause. In so holding, the Court noted: "Congress carried over from RFRA the 'compelling governmental interest'/'least restrictive means' standard". Id. at 717 (citing 146 Cong. Rec. S7774 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA)). The Court also held, however, that "courts entertaining complaints under [the below-quoted section] 3 would accord 'due deference to the experience and expertise of prison

and jail administrators'". Id. (quoting 146 Cong. Rec. S7775 (July 27, 2000)). RLUIPA, the Court held, does not "elevate accommodation of religious observances over an institution's need to maintain order and safety". Id. at 722.

RLUIPA § 3(a), the relevant provision here, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). As discussed, § 3(a) implements nearly the same strict-scrutiny standard previously applied under RFRA. See Cutter, 544 U.S. at 717; see also Thompson, 86 F. App'x at 19 (unpublished).

2.

In holding Longoria's RLUIPA claim was without merit, the district court conceded "the grooming policy might create a substantial burden on [Longoria's] religious exercise" sufficient to satisfy the initial prong of § 3(a). It found the TDCJ-ID's interests in order and safety were sufficient, however, to justify that burden. Longoria maintains the district court erred by dismissing the RLUIPA claim without first serving the defendants and requiring them to demonstrate: (1) the grooming policy served a compelling interest; and (2) the policy is the least restrictive means to achieve that interest.

a.

To demonstrate a violation of RLUIPA § 3(a), Longoria must initially "demonstrate that the government practice complained of imposes a 'substantial burden' on his religious exercise". Adkins, 393 F.3d at 567. This threshold

determination involves a two-part inquiry: "(1) [i]s the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'"? Id.

"The RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief'." Id. (quoting 42 U.S.C. § 2000cc-5(7)). As our court noted in Adkins, this definition is broader than the standard previously employed for determining "exercise of religion" under RFRA. Id. (noting that many courts under RFRA required the exercise to be central to the religion). Given this broad standard, Longoria sufficiently alleged that growing his hair is a "religious exercise" under RLUIPA. Therefore, the second part of the threshold inquiry comes into play: whether the grooming policy places a "substantial burden" on this religious exercise.

b.

Our court defined what constitutes a substantial burden in Adkins:

[A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate[s] his religious beliefs. And, in line with the . . . teachings of the Supreme Court, the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

Id. at 570 (citing Sherbert v. Verner, 374 U.S. 398 (1963) and Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707 (1981)). As the district court correctly determined, the TDCJ-ID's grooming policy might pose a substantial burden on Longoria's religious exercise. According to the district court, Longoria's Spears-hearing testimony indicated he was disciplined for violating that policy. The facts, when viewed in the requisite light most favorable to

Longoria, indicate he alleged sufficient information to state a claim on whether the grooming policy substantially burdened his religious exercise. See Diaz, 114 F.3d at 72-73 ("The grooming regulation, given the strong significance of long hair in the Native American belief, legitimately may be deemed to work a substantial hardship upon Diaz's practice of his faith." (footnote omitted)).

c.

Accordingly, the linchpin here is whether it was proper for the district court to dismiss this action, without requiring the TDCJ-ID to demonstrate the substantial burden on Longoria's religious exercise was justified by a narrowly tailored governmental interest under RLUIPA. The district court determined, based on language in Cutter, that the significant interest in order and safety was sufficient to warrant the burden posed by the grooming policy on Longoria's ability to grow his hair in conformity with his religious practices.

Our holding in Diaz provided sufficient basis for the district court to hold, as a matter of law, that Longoria did not state a claim under RLUIPA. Diaz, 114 F.3d at 72-73. In Diaz, which, again, concerned RFRA, the district court conducted an expanded evidentiary hearing and found: "long hair . . . facilitates the transfer of contraband and weapons into and around TDCJ institutions", id. at 73; and "requiring prisoners to have short hair makes it more difficult for escaped prisoners to alter their appearance from the photographs taken periodically of all TDCJ inmates", id. As stated supra, RLUIPA employs the test previously used under RFRA. See Cutter, 544 U.S. at 717. Therefore, we need not require the TDCJ-ID to demonstrate, as it did in Diaz, that its grooming policy "is related to security and, as such, involves a compelling state interest", which "cannot meaningfully be achieved appropriately by any different or lesser means than hair length standards". Diaz, 114 F.3d at 73 (citations omitted).

Restated, any differences between RFRA and RLUIPA do not prevent our accepting the evidentiary showing in Diaz as sufficient to preclude Longoria's

8

RLUIPA claim. As discussed, RLUIPA imposes a broader definition of what constitutes a religious exercise. See Adkins, 393 F.3d at 567. The district court, however, conceded the possibility of the grooming policy's placing a substantial burden on Longoria's ability to exercise his religion. Therefore, it is immaterial that the standard for "religious exercise" is broader under RLUIPA than it was under RFRA.

Because the compelling government interest/least restrictive means standard was carried over from RFRA to RLUIPA, our holding in Diaz is dispositive for Longoria's RLUIPA claim. See Thompson, 86 F. App'x at 18 ("the reasoning applied in [RFRA] cases may still be considered because RLUIPA, which has taken the place of RFRA, applies a very similar test"); see also Hoevenaar v. Lazaroff, 422 F.3d 366, 370 (6th Cir. 2005) ("RFRA cases according deference to prison decisions [are] applicable to cases brought pursuant to the RLUIPA" (citing Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 987-88 (8th Cir. 2004)). As such, remanding this action to district court to require an identical evidentiary showing as in Diaz is not needed and would constitute a waste of scarce judicial resources.

## C.

Longoria also asserts the district court erred in dismissing his equal-protection challenge to the grooming policy. He claims he was treated differently from female Native American prisoners who are not forced to cut their hair. As the district court ruled, Longoria must show the TDCJ-ID purposefully discriminated against him and that he was treated differently from similarly-situated prisoners. Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985)). The grooming policy applied to all persons incarcerated in the Robertson unit, so there is no equal-protection denial. In any event, our court rejected an equal-protection claim based on differing grooming regulations applied to male and

female inmates in Hill v. Estelle, 537 F.2d 214, 215-16 (5th Cir. 1976). Therefore, Longoria's equal-protection claim is without merit.

## III.

For the foregoing reasons, the judgment is AFFIRMED.