# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2010

Charles R. Fulbruge III
Clerk

No. 08-40821

IRON THUNDERHORSE,

> Plaintiff-Appellant,

v.

BILL PIERCE, Individually and in his Official Capacity as Chaplaincy Director; RON TEEL, Individually and in his Official Capacity as Coordinator of Native American Religious Programs; UNIDENTIFIED DOES; and BRAD LIVINGSTON,

> Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas, Lufkin Division
USDC No. 9:04-CV-222

---

Before KING, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a bench trial involving claims brought pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5, and 42 U.S.C. § 1983, against Defendants-Appellees who are officials or employees of the Texas Department of Criminal Justice-Institutional Division ("TDCJ"). *Pro se* Plaintiff-Appellant Iron Thunderhorse,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a prisoner in the custody of the TDCJ, contends that the magistrate judge improperly dismissed his claims that Defendants violated his free-exercise rights under RLUIPA by (1) denying him permission to grow his hair, (2) prohibiting him from performing pipe ceremonies in his cell, and (3) denying him access to a colored headband. Thunderhorse also argues that the TDCJ's failure to explicitly recognize Native Americans as a racial category (as opposed to "Other") denies him certain prison benefits. With respect to the bench trial, he alleges that the magistrate judge inappropriately denied both his request to subpoena two witnesses and his motion for a jury trial. He further claims that the magistrate judge was biased against him and the attorneys for Defendants committed discovery abuse. For the reasons set forth below, we AFFIRM.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Thunderhorse filed this action in October 2004, and this is the second time that this case has come before us. The magistrate judge had previously granted summary judgment for Defendants on the RLUIPA claims now before us. *See Thunderhorse v. Pierce*, 418 F. Supp. 2d 875, 899 (E.D. Tex. 2006), *rev'd* 232 F. App'x 425 (5th Cir. 2007). On appeal, we found that the magistrate judge did not give Thunderhorse sufficient notice so that he could properly respond to Defendants' motions, and the lack of notice resulted in Thunderhorse's failure to file a "large amount of evidence." *Thunderhorse*, 232 F. App'x at 427. Accordingly, we vacated the grant of summary judgment and remanded the case for the magistrate judge to consider the motions in light of the previously unfiled evidence. *See id*. Instead of reconsidering the summary-judgment motions, the magistrate judge held a bench trial on April 1, 2008. At the pre-trial conference and again at trial, Thunderhorse objected to the magistrate judge's denial of his request for a jury trial and his motion to subpoena Debra Liles and Chaplain Al O'Brien, former employees of the TDCJ, as trial witnesses.

No. 08-40821

On July 20, 2008, the magistrate judge issued an opinion granting the following injunctive relief: (1) the TDCJ shall recognize Native American Shamanism as a valid faith with its own "faith code"; (2) "Thunderhorse shall be permitted to request the designation of a reasonable number of holy days and to request traditional foods for feast days, in conformity with TDCJ regulations"; and (3) if Thunderhorse is released from administrative segregation, the TDCJ shall not unreasonably deny him access to pipe ceremonies, a medicine bundle, a clay flute, and a small drum. She denied all other relief that Thunderhorse sought. The facts set forth below were developed at the bench trial.

Thunderhorse claims that he is the "Grand Sachem" (Chief) of the Quinnipiac Indians, a part of the Algonquian Confederacy. His faith is Native American Shamanism. Although Thunderhorse has submitted an application for federal recognition of the Quinnipiac, it is not a federally recognized tribe.

Thunderhorse first entered the TDCJ in 1967. He has been released and re-incarcerated at least three times, and he has remained incarcerated since 2002. His current problems with the TDCJ began when he transferred from the Stiles Unit of the TDCJ to the Polunsky Unit in August 2004. Before arriving at the Polunsky Unit, Thunderhorse claims that he was able to maintain long hair (with braids that fell to his lower back),[1] wear a colored headband, perform pipe ceremonies, and possess other religious items. According to Thunderhorse, the TDCJ provided these accommodations while he was in the general population and when he was confined to administrative segregation.

When he first arrived at the Polunsky Unit, he was in the general population. He alleges that the staff there harassed him about his religion and ethnicity, and the guards confiscated his medicine bag, religious medallion, and quartz crystal. According to Thunderhorse, this harassment resulted in an

---

[1] Indeed, these severed braids, which we have inspected, were part of the appellate record.

3

No. 08-40821

altercation with a guard in June 2006. As a result, the TDCJ assigned him to administrative segregation. While there, he is not allowed to attend pipe ceremonies, conduct a personal pipe ceremony in his cell, or possess a flute or drum. In addition, the TDCJ prohibits him from wearing a colored headband, and the TDCJ refuses to grant him an exemption to its hair-length restriction. However, the TDCJ does allow him to wear a white headband. All inmates at the Polunsky Unit must abide by the headband and hair-length policies.

## II. STANDARD OF REVIEW

We review the magistrate judge's legal conclusions at a bench trial de novo and her findings of fact for clear error. *Adkins v. Kaspar*, 393 F.3d 559, 563 (5th Cir. 2004) (citation omitted). Because Thunderhorse is a *pro se* litigant, we construe his briefs liberally and "apply less stringent standards" than to parties represented by counsel. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

## III. DISCUSSION

A.    The RLUIPA Free-Exercise Claims

The core of this appeal is Thunderhorse's contention that certain policies of the TDCJ violate his rights, under RLUIPA, to freely exercise Native American Shamanism. Specifically, he complains that the TDCJ prohibits him from growing his hair and from performing religious pipe ceremonies in his cell. He also complains that the TDCJ prohibits him from wearing a colored headband.

1.    Legal Standards

RLUIPA mandates that

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

(1) is in furtherance of a compelling governmental interest; and

No. 08-40821

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

An inmate-plaintiff seeking relief under RLUIPA bears the initial burden of demonstrating that the challenged prison policy substantially burdens his exercise of religion. *See* 42 U.S.C. §§ 2000cc-1(a)-2000cc-2(b). To meet this burden, the plaintiff must show (1) that the burdened activity is a "religious exercise," and (2) that the burden is substantial. RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). In *Adkins v. Kaspar*, we defined "substantial burden" as follows:

> [A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs . . . . [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

393 F.3d 559, 570 (5th Cir. 2004) (citations omitted). This inquiry "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden." *Id*. at 571.

If the plaintiff satisfies this threshold requirement, the burden shifts to the defendant to demonstrate that the challenged policies are the least restrictive means of furthering a compelling governmental interest. *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (citation omitted). In making this determination, the court must give due deference "to the experience and

5

expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citation omitted). RLUIPA "is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Baranowski*, 486 F.3d at 125 (citation omitted).

Thunderhorse's primary contention here is that the magistrate judge failed to analyze his claims under RLUIPA's compelling-interest, least-restrictive-means standard of review.

### 2.    The TDCJ's Hair-Length Policy

The magistrate judge properly found that *Diaz v. Collins*, 114 F.3d 69 (5th Cir. 1997), and *Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007), foreclosed Thunderhorse's RLUIPA claim against the TDCJ's hair-length policy. In both cases, the plaintiffs, like Thunderhorse, were prisoners who, for religious reasons, sought permission not to cut their hair. *Diaz*, 114 F.3d at 70 (following the religious practices of the Aztecs); *Longoria*, 507 F.3d at 900-01 (practicing his religion as a Mexica Nahua Native American). In both cases, we found that the policy substantially burdened (or the plaintiff had sufficiently pleaded that the policy substantially burdened) a religious exercise. *See Longoria*, 507 F.3d at 903; *Diaz*, 114 F.3d at 72-73. But we upheld the policy as the least restrictive way to serve a compelling governmental interest—prison security.

In *Diaz*, which arose under RLUIPA's predecessor statute, the Religious Freedom Restoration Act ("RFRA"), we explained that prisoners may hide weapons and other contraband in their hair. 114 F.3d at 73 In addition, requiring short hair makes it more difficult for an escaped prisoner to alter his appearance from the photographs that the TDCJ periodically takes of each

No. 08-40821

inmate. *Id*.[2] In light of these concerns, we held that "the security interest at stake cannot meaningfully be achieved appropriately by any different or lesser means than hair length standards." *Id*.

In *Longoria*, 507 F.3d at 904, we affirmed the district court's dismissal of Longoria's RLUIPA claim even though the district court did not determine whether the policy was narrowly tailored to achieve a compelling governmental interest. We explained that such a determination was unnecessary because we had previously evaluated the same policy under RFRA. *Id*. at 901, 904 (citing *Diaz*, 114 F.3d at 73). Because RLUIPA and RFRA shared the least-restrictive-means, compelling-interest test, we held that the district court was not required to reexamine the TDCJ's hair-length policy to conclude that Longoria had failed to state a claim under RLUIPA. *See id*. at 904. Consistent with these decisions, we affirm the dismissal of this RLUIPA claim.[3]

### 3.    Colored Headband

To establish that the TDCJ's prohibition against colored headbands violates RLUIPA, Thunderhorse must first show that the prohibition substantially burdens his religious exercise. *See* 42 U.S.C. §§ 2000cc-1(a)-

---

[2] Defendants introduced similar evidence in this case. Furthermore, the Regional Director of the TDCJ explained that, because altercations between inmates occur with some frequency, the policy prevents inmates from "grab[bing] that handful of hair, [which] becomes a heck of a leverage issue . . . ."

[3] Thunderhorse argues that the policy cannot be the least restrictive way to maintain prison security because the TDCJ enforces it in an arbitrary manner and other prison systems, including the Federal Bureau of Prisons, permit long hair. He cites examples of how the TDCJ had previously permitted him and other inmates to have long hair. These contentions find support in *Warsoldier v. Woodford*, in which the Ninth Circuit issued a preliminary injunction, pursuant to RLUIPA, that prevented the California Department of Corrections from enforcing its hair-length restriction against a Native American inmate. *See* 418 F.3d 989, 999-1001 (9th Cir. 2005). The Ninth Circuit found that the restriction was not the least restrictive means to maintain prison security, in part, because the prisons run by the federal government, Oregon, Colorado, and Nevada all permit long hair or provide religious exemptions to their hair-length restrictions. *See id*. at 999 (citations omitted). This court, however, is bound by *Diaz* and *Longoria*.

2000cc-2(b). The magistrate judge found that Thunderhorse failed to establish that wearing a white cloth headband, which the TDCJ allows, as opposed to a colored headband, which the TDCJ prohibits, substantially burdens his religious exercise. We agree.

Thunderhorse's sole complaint on appeal is that he is unable to purchase the white headbands through the approved vendors or at the TDCJ's commissaries. He contends that this inability to purchase the white headbands, rather than the policy itself, is the substantial burden. At trial, he admitted that he cannot purchase the white headbands because the only remaining approved vendor mishandles his orders. In response, the Regional Director of the TDCJ promised to attempt to secure more vendors. Based on this evidence, the only fault that the magistrate judge could have attributed to the TDCJ is that it should have selected more competent vendors—an oversight that does not rise to the level of a RLUIPA violation. In sum, Thunderhorse has not shown that the TDCJ's headband policy substantially burdens his rights under RLUIPA.[4]

### 4. Performing Personal Pipe Ceremonies in His Cell

The TDCJ's ban on pipe use within the cell does not violate RLUIPA. Thunderhorse seeks to perform personal pipe ceremonies inside of his cell.[5] According to Thunderhorse, Native American Shamans use the pipe to pray. It

---

[4] Thunderhorse does dispute the TDCJ's justification for the restriction against colored headbands, which the magistrate judge credited. According to the TDCJ, the restriction is the least restrictive way to prevent inmates from using colored accessories to promote gang affiliations. Thunderhorse, however, is in administrative segregation where he spends most of his time alone and in his cell. Neither the magistrate judge nor the TDCJ has explained how allowing him to wear a colored headband while he is alone and in his cell could promote gang violence. But we do not reach this question because Thunderhorse has failed to satisfy his threshold burden of establishing that the white-headband-only policy substantially burdens his religious exercise.

[5] The TDCJ allows those in the general population (but not those in administrative segregation such as Thunderhorse) to participate in group pipe ceremonies outdoors. At trial, Thunderhorse made clear that he did not seek to attend those ceremonies. Instead, he only sought to perform personal pipe ceremonies inside of his cell.

is undisputed that the pipe ceremony is a religious exercise and that the prohibition on it is a substantial burden. Therefore, the issue is whether Defendants have shown that the prohibition on personal pipe use within the cell is the least restrictive method to achieve a compelling interest.

Defendants argue that the compelling interest here is prison security: no inmate may have materials inside of his cell that could be used to start a fire or create an explosive. The magistrate judge properly ruled for Defendants on this basis, stating that "[b]ecause Thunderhorse is in administrative segregation, he does not have access to pipe ceremonies for security reasons, which reasons represent compelling governmental interests."

Maintaining prison security is a compelling interest. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 334 (5th Cir. 2009) ("Texas obviously has compelling governmental interests in the security . . . of its prisons . . . ."). We find no reason to question the TDCJ's position that the prohibition on incendiary items within the cell is the least restrictive way to prevent inmates from starting fires in their cells. Hence, the TDCJ's prohibition on pipe use within the cell does not violate RLUIPA.

B.    Request for a Jury Trial

Thunderhorse was not entitled to a jury trial because he sought only injunctive and declaratory relief. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 193 (5th Cir. 2008) ("[U]nless Congress has expressly provided to the contrary, an injunction is an equitable remedy that does not invoke a constitutional right to a jury trial." (citations omitted)); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 n.19 (5th Cir. 1998) (citations omitted). At trial, when Thunderhorse raised this issue, the magistrate judge explained that "the reason it was a bench trial was because you were seeking injunctive relief and declaratory relief. That's equitable relief." Thunderhorse conceded, "Okay. I misunderstood." He did not claim that he sought any relief other than equitable

relief. Under these circumstances, the magistrate judge properly denied Thunderhorse's request for a jury trial.

Thunderhorse apparently recognizes that he was not entitled to a jury trial, so he argues that, under Federal Rule of Civil Procedure 39(c), the court should have ordered one. Rule 39(c) is inapplicable. It states that "[i]n an action not triable of right by jury, the court, on motion or on its own: (1) may try an issue with an advisory jury; or (2) may, with the parties' consent, try an issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right . . . ." Fed. R. Civ. P. 39(c). Thunderhorse did not seek an advisory jury nor has he argued or pointed to any portion of the record showing that Defendants consented to a jury trial.

Thunderhorse also claims that he was entitled to a jury trial because, in his Complaints, he "left open the issue of damages depending on what verdict was returned by a jury." His Amended Complaint, however, does not seek, or reserve the right to seek, monetary damages. Instead, the "Prayer for Relief" only includes the following five requested remedies: (1) declaratory judgment, (2) injunctive relief, (3) costs of the suit, (4) attorney fees, and (5) other relief deemed proper by the court.

C.    Request to Subpoena Witnesses

The magistrate judge did not err by denying Thunderhorse's request to subpoena two witnesses, Debra Liles and Chaplain Al O'Brien, to testify at trial. We review such decisions for an abuse of discretion. *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004). "Before we will hold that the district court abused its discretion by refusing to issue a subpoena, the proponent of the subpoena must show that relevant testimony was excluded, or that a substantial need for a witness's trial testimony existed." *Id*. (footnote omitted). Thunderhorse argues that the magistrate judge should have compelled the attendance of Liles and O'Brien because he considered them unnamed John and Jane Doe Defendants,

and his Amended Complaint identified "all others similarly situated" as Defendants.

It appears that he raised this argument for the first time on the day of trial, and the record does not show that Thunderhorse has ever served or asked the court to serve Liles and O'Brien with the Summons and Complaint, *cf.* Fed. R. Civ. P. 4. As such, the magistrate judge properly denied his request to compel Liles and O'Brien to appear as Defendants.

Thunderhorse also mischaracterizes the proceedings before the magistrate judge on this issue by selectively quoting from her February 20, 2008 Order to Produce Witnesses. According to Thunderhorse, the Order stated, "The State of Texas shall produce Debra Liles, Deacon Al O'Brien . . . [.]" But what the Order actually required was that the "State of Texas shall produce, Debra Liles, Reverend-Deacon Al O'Brien (*or provide last known address*) . . . ." On March 17, 2008, Defendants complied: They informed the magistrate judge and Thunderhorse that Liles and O'Brien were no longer employed with the TDCJ and that they would not be available for trial. Defendants also provided Liles and O'Brien's last known addresses to the court under seal. Under these circumstances, we cannot find that the magistrate judge abused her discretion in denying Thunderhorse's request to subpoena these witnesses to testify.

D.    Alleged Judicial Bias

During the trial, the magistrate judge stated that this court had already ruled that the TDCJ's grooming code, as applied to hair length, is enforceable under RLUIPA. She explained that Thunderhorse would have to argue the issue to this court because she was bound by our precedent. Thunderhorse argues that these statements, coupled with the magistrate judge's unwillingness to consider evidence that the hair-length regulations violated RLUIPA, evinces judicial bias. Once again, Thunderhorse mischaracterizes what occurred. Contrary to Thunderhorse's argument, the record reflects that the magistrate judge allowed

detailed testimony about the hair-length code over Defendants' objections that the Fifth Circuit had already decided the issue. In sum, there is no merit to this claim of judicial bias.

E.    Alleged Discovery Abuse

Thunderhorse alleges that Defendants' attorneys engaged in discovery abuse, such as failing to disclose documents and impeachment information, and informing Thunderhorse, just four days before trial, that Liles and O'Brien no longer worked for the TDCJ. According to Thunderhorse, "[t]hese tactics and elements of surpri[s]e etc. operated to cause Appellant, a disabled [*Pro Se*] litigant[,] extreme undue prejudice and constitutes misconduct by the [S]tate of Texas." We review alleged discovery errors for an abuse of discretion and will not reverse unless the party alleging the error establishes that he was prejudiced by the error. *See United States v. Garcia*, 567 F.3d 721, 734 (5th Cir. 2009); *Hastings v. North East Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th Cir. 1980).

We have already addressed the magistrate judge's denial of the motion to subpoena Liles and O'Brien. Thunderhorse's remaining allegations of misconduct also fail because he has not alleged that the magistrate judge made incorrect rulings or rulings that prejudiced him as a result of this alleged misconduct. Nor has he identified anything in the record showing that he objected to this conduct. Instead, his appellate papers focus exclusively on the "misconduct by the [S]tate of Texas." As such, these claims are not properly before the court as there are no decisions by the magistrate judge to review. *See Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 14 (1st Cir. 2002) (finding no abuse of discretion where the plaintiffs did not object to the alleged discovery abuses).

F.    Recognition of Native Americans as a Racial Category

Thunderhorse complains about the TDCJ's method for categorizing its inmates as either "White," "Black," "Hispanic," or "Other." According to

Thunderhorse, categorizing him as "Other" instead of "Native American" violates his Fourteenth Amendment rights by depriving him of "any legitimate rehabilitative, cultural programs, services and activities that could, should or would be available if such a category existed." Once again, Thunderhorse has not pointed to any evidence to support this supposition. Nor have we found any in the appellate record. To the contrary, the Regional Director of the TDCJ testified that there are no benefits attached with these racial classifications. Hence, we find no clear error in the magistrate judge's decision to credit this uncontroverted testimony and to dismiss this claim.

G.    Other Claims

Thunderhorse's remaining claims lack merit. First, he argues that the TDCJ favors white supremacist and multi-denominational faiths over traditionalist Native American Shamanism because the TDCJ does not have a "faith code" for Native American Shamanism. This argument overlooks the fact that he prevailed on this very issue before the magistrate judge who ordered that "Native American shamanism should be recognized as a legitimate faith, with its own faith code . . . ." Indeed, his brief recognizes that the magistrate judge's decision "give[s] Appellant the right to be recognized and categorized as a Native American Shaman with its own sub-code, with a choice of holy days and with special meals."

Second, Thunderhorse complains about the magistrate judge's ruling that he may have a ceremonial pipe, drum, clay flute, and medicine bundle when he is released from administrative segregation. He argues that this ruling creates an incentive for the TDCJ to keep him in administrative segregation for as long as possible. This argument is entirely speculative and not ripe.

Third, during this appeal, Thunderhorse filed a Motion for Leave to File a Supplemental Brief, which we granted. In it, he contends that the TDCJ discriminates against his religion because he cannot obtain special foods for his

No. 08-40821

holy days while Jewish, Muslim, and Catholic prisoners in administrative segregation can. The magistrate judge ruled on this matter in her Order Denying Plaintiff's Second Motion for Enforcement, dated July 21, 2009. She found that the religious meals that the Jewish, Muslim, and Catholic prisoners receive consist of the same foods provided to all inmates. She ruled that, consistent with the TDCJ's policy, if Thunderhorse wants food that the TDCJ does not serve so that he can celebrate religious holidays, he can arrange for outside sources to deliver the food through the prison chaplain. Thunderhorse does not challenge these rulings in his supplemental brief. Therefore, we do not address this claim.[6]

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment.

---

[6] The remainder of the supplemental brief echoes prior requests for a pipe ceremony and an exemption to the hair-length policy, which we have addressed.

14