# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41518
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2018

Lyle W. Cayce
Clerk

ROBERT DANIEL KEYS,

Plaintiff-Appellant

v.

CORRECTION OFFICER II CANDACE TORRES; CLERK 3 KIESHA COLLINS; TEXAS DEPARTMENT OF CRIMINAL JUSTICE – INSTITUTIONAL DIVISION; WARDEN RICHARD CRITES; DAVID DIAZ; CARROL MONROE; JENNIFER SMITH; TEXAS BOARD OF CRIMINAL JUSTICE; TEXAS DEPARTMENT OF CRIMINAL JUSTICE DIRECTOR'S REVIEW COMMITTEE; TEXAS DEPARTMENT OF CRIMINAL JUSTICE MAILROOM SYSTEM COORDINATOR'S PANEL; WILLIAM STEPHENS,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CV-350

Before DAVIS, COSTA, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41518

Robert Daniel Keys, Texas prisoner # 873144, appeals the summary judgment dismissal of his 42 U.S.C. § 1983 complaint.[1]  Keys filed a § 1983 complaint against numerous Texas Department of Criminal Justice employees and officials and alleged violations of his First Amendment and due process rights and attacked the constitutionality of TDCJ Board Policy 03.91,[2] which is the TDCJ's Uniform Offender Correspondence Rule.  *See Prison Legal News v. Livingston*, 683 F.3d 201, 207 (5th Cir. 2012).  The basic facts underlying Keys's complaint are that pursuant to Policy 03.91 the defendants confiscated certain maps from his cell and denied receipt of numerous issues of *Shotgun News* magazine that Keys had ordered.

Keys sued defendants Jennifer Smith, Kiesha Collins, Candice Torres, Carol Monroe, David Diaz, and Richard Crites in their individual capacities for nominal and punitive damages.  He also sued those defendants along with Williams Stephens, to the extent they were still employed by the TDCJ, in their official capacities for declaratory and injunctive relief.  In their motion for summary judgment defendants asserted that Keys had failed to exhaust his administrative remedies as to his claims against defendants Diaz and Crites concerning the confiscation of his maps, failed to establish any violation of his First Amendment rights as a result of the enactment and enforcement of Policy 03.91, and failed to overcome the defendants' entitlement to qualified immunity.  The district court granted the motion.

A district court's grant of summary judgment is reviewed de novo. *Prison Legal News*, 683 F.3d at 211.  Summary judgment is proper if the evidence

---

[1] Keys does not challenge, and therefore has abandoned any challenge to, the district court's other rulings dismissing defendants and claims set forth in his complaints.  *See Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

[2] At all relevant times, Policy 03.91 (2010) was in effect; in 2013, however, it was amended.  *See* Policy 03.91 (rev. 2, 2010); Policy 03.91 (rev. 3, 2013).

No. 16-41518

shows there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. *Id.* (citing FED. R. CIV. P. 56(a)). We view the evidence in the light most favorable to the nonmoving party. *Id.*

## I.

The record demonstrates that Keys failed to exhaust his claims that in December 2010 Diaz and Crites improperly confiscated his maps under Policy 03.91. *See Jones v. Bock*, 549 U.S. 199, 211–12 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). His conclusional assertions to the contrary are belied by the record and are insufficient to satisfy his summary judgment burden. *See Prison Legal News*, 683 F.3d at 211; *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

## II.

Keys argues that Policy 03.91 is unconstitutional on its face and as applied to him. For his "as-applied" argument, Keys asserts that his First Amendment rights were violated when defendants denied him receipt of numerous issues of his *Shotgun News* magazine on the grounds that certain images were proscribed by Policy 03.91 because they described the manufacture of weapons.

Prison mail regulations that restrict the flow of publications to an inmate, such as Policy 03.91, are analyzed under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989). In *Turner*, the Supreme Court held that a prison regulation that impinges on an inmate's constitutional rights is "valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89; *see also Thornburgh*, 490 U.S. at 413–14. The *Turner* Court then set forth the following factors to consider when determining the reasonableness of the regulation at

No. 16-41518

issue: (1) whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) what "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there are "obvious, easy alternatives" to the regulation. 482 U.S. at 89–91. "Rationality is the controlling factor, and the remaining factors are best understood as indicators of rationality." *Prison Legal News*, 683 F.3d at 214–15 (cleaned up).

The inmate has the burden of demonstrating that there is no rational relation to a legitimate penological interest. *See id.* at 216; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."). Courts give considerable deference to the decisions of officials who regulate prison administration and operations. *See Thornburgh*, 490 U.S. at 407–09; *Turner*, 482 U.S. at 84–85, 89.

Applying the *Turner* factors, Policy 03.91 is constitutional on its face and as applied to Keys. Policy 03.91, which provides in relevant part that a publication can be rejected due to content if it contains information regarding the manufacture of weapons, was promulgated to promote prison safety and security. *Prison Legal News*, 683 F.3d at 215–18. There is no question that the policy's goal of promoting safety and security is a valid penological interest; the Supreme Court has expressly recognized that protecting prison security is "central to all other corrections goals." *Thornburgh*, 490 U.S. at 415 (internal quotation marks and citation omitted); *see also Turner*, 482 U.S. at 89–93; *Prison Legal News*, 683 F.3d at 215–18; *Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999).

4

No. 16-41518

Policy 03.91 is also facially neutral. *Thornburgh*, 490 U.S. at 415. The policy provides that a publication may be rejected due to content if it includes contraband; material written solely for the purpose of communicating information designed to achieve the breakdown of prisons; information concerning the manufacture of explosives, weapons, and drugs; material related to setting up and operating criminal schemes; or sexually explicit images. Because Policy 03.91 makes distinctions between publications based on potential implications for prison security, which are unrelated to the suppression of expression, the policy is "facially neutral in the relevant sense." *Prison Legal News*, 683 F.3d at 215 (internal quotation marks and citation omitted); *see Thornburgh*, 490 U.S. at 415. Accordingly, Policy 03.91 is facially constitutional.

With respect to Keys's "as-applied" challenge, prison officials have determined that an inmate's possession of a publication, such as *Shotgun News*, containing information regarding the manufacture of weapons poses a security threat for numerous reasons.[3] There is no evidence that the exclusion of *Shotgun News* was arbitrary, irrational, or biased. *See Prison Legal News*, 683 F.3d at 216, 220 n.8. In light of the deference given to the determinations of prison officials, which "must be at its zenith in the context of challenges to individualized decisions implementing a facially constitutional policy," the rejection of *Shotgun News* was rationally related to the legitimate penological interest of maintaining prison safety and security. *Id.* at 221. So the first *Turner* factor is resolved in favor of the defendants.

---

[3] The only publication considered by this court with respect to Keys's "as-applied" challenge is *Shotgun News*. The other publications and correspondence Keys mentions on appeal are not properly before us. *See* FED. R. CIV. P. 15(d); *Longoria*, 507 F.3d at 901; *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 (Tex. App.—Fort Worth 1997).

No. 16-41518

The second *Turner* factor looks to whether there is an alternative means of exercising the asserted right that remains open.  482 U.S. at 90, 92.  The right in question is construed "sensibly and expansively."  *Thornburgh*, 490 U.S. at 417.  The restriction here of *Shotgun News* does not prevent Keys from ordering other magazines or books that would be permissible under prison regulations.  *See Prison Legal News*, 683 F.3d at 218.  Policy 03.91 permits Keys to send, receive, and read countless other publications.  *See Thornburgh*, 490 U.S. at 417–18; *Prison Legal News*, 683 F.3d at 218–19.  Because Keys has other means of exercising his rights, this factor also weighs in defendants' favor.

The third *Turner* factor is "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison."  *Thornburgh*, 490 U.S. at 418.  The exclusion of *Shotgun News* is rationally related to prison safety and security; permitting the magazine could have a "ripple effect" on the security of other inmates and staff.  *Id.*; *Turner*, 482 U.S. at 90.  Consequently, this factor too weighs in defendants' favor.

The fourth *Turner* factor looks to whether the prison has an easy alternative that will accommodate the prisoner's rights at a de minimis cost to the valid penological interest.  482 U.S. at 90–91.  Keys's proposed alternative to the all-or-nothing rule of Policy 03.91 is the so-called clip rule.  Under the clip rule, the rejected portions of a publication are removed while the rest of it is sent to the inmate.  *See Thornburgh*, 490 U.S. at 418–19.  But the clip rule has been rejected as a viable alternative by the Supreme Court.  *Id.*; *see also Prison Legal News*, 683 F.3d at 218.  This factor thus weighs in defendants' favor.

No. 16-41518

Because the rejection of *Shotgun News* under Policy 03.91 was reasonably related to the legitimate penological interests of safety and security, Keys can show no First Amendment violation. *See* 482 U.S. at 89.

III.

Keys also argues that the appeals process provided for under Policy 03.91 violates due process. The purpose of due process is to "protect a substantive interest to which the individual has a legitimate claim of entitlement." *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) (internal quotation marks and citation omitted). As we have explained, Keys has not shown that the defendants violated a constitutionally protected interest that could form the basis of a due process claim.[4] *See id.*

IV.

Qualified immunity affords government officials protection against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Keys has not shown a violation of either his First Amendment or due process rights. The defendants are therefore entitled to qualified immunity. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

\*\*\*

The district court's judgment is AFFIRMED, and Keys's motion to appoint counsel is DENIED as moot.

---

[4] The current version of Policy 03.91 provides an inmate with the opportunity on appeal to present arguments against the rejection of a publication. Policy 03.91 (rev. 3, 2013).