## In re THREE CHILDREN.

### No. MISC. 98–100.

United States District Court,
D. New Jersey.

Dec. 2, 1998.

Holly K. Kulka, Perry Carbone, Office of the United States Attorney, Newark, NJ, for Plaintiff.

James A. Plaisted, Walder, Sondak & Brogan, P.S., Roseland, NJ, for Defendant.

### OPINION

WALLS, District Judge.

Counsel for the Three Children moves, on religious grounds, to quash subpoenas which direct the children to testify before a federal grand jury. Having heard oral argument, the Court denies the motion.

### FACTS

The Three Children are followers of the Orthodox Jewish faith and have been subpoenaed to testify before a grand jury which is investigating their parent as its target. Primarily, the government desires to obtain from them evidence relating to their activities as employees in their parent's business ventures. The Three Children claim that they cannot give such testimony because "the Talmud ... prohibit[s] and disqualif[ies] the testimony of relatives in reference to legal proceedings in a *Beis Din*, a court of Jewish law." (Rabbi's Opinion, Ex. A at 2.) And to support their position, they have provided

rabbinical opinions including one of a rabbi who declared that he "could not find any precedent in rabbinic responsa permitting a child to testify against a parent in Jewish Courts of law." (Rabbi's Opinion, Ex. A at 2.) A consulted rabbi in Israel "concurred, requesting that it be conveyed to the authorities here that the rabbis do no permit the children to testify as a matter of Jewish law." (Rabbi's Opinion, Ex. A at 4.) The testimony of a child against a parent is "so serious that penitence does not expunge it, Yom Kippur (the Day of Atonement, which has the power to atone for all other sins) cannot atone for it, and suffering will not expiate it." (Rabbi's Opinion, Ex. A at 4.) The Three Children move to quash the subpoena on the ground that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., requires the government to demonstrate a compelling need for such testimony before it may substantially burden their free exercise of religion. They argue that the government has not met its burden.

## DISCUSSION

### A. Whether There is a Parent–Child Testimonial Privilege

The Three Children argue that they should not be compelled to testify against their parent because their religious faith prohibits such testimony. They ask this Court to recognize a privilege which would excuse them from being required to testify against their parent. There are two possible privileges upon which the Three Children could rely: a general parent-child testimonial privilege and a privilege based on religious beliefs.

■■■ There is no general privilege which prevents a child from being required to testify against his/her parent or vice versa. Federal Rule of Evidence 501 provides that privileges in federal court are to be "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." "Federal common law recognizes a privilege only in rare situations." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir.1997). Recently, the Third Circuit joined the eight other circuits

which have addressed the issue in declining to recognize a parent-child privilege. *In re Grand Jury*, 103 F.3d 1140 (3d Cir.1997), *cert. denied sub nom. Roe v. United States,* —— U.S. ——, 117 S.Ct. 2412, 138 L.Ed.2d 177 (1997). The Third Circuit observed that "no federal Court of Appeals and no state supreme court has [yet] recognized such a privilege." 103 F.3d at 1146. It is well-settled that here there is no general parent-child testimonial privilege which the Three Children may invoke.

### B. Whether the Religious Freedom Restoration Act Compels the Court to Establish a Parent–Child Testimonial Privilege

This Court should recognize a parent-child testimonial privilege based upon their religious beliefs, the children urge. They contend that if compelled to testify against their parent before the grand jury, they will violate a fundamental tenet of Jewish law. They maintain that under RFRA, the government cannot so burden their free exercise of religion without demonstrating a compelling governmental interest which it has not done.

### 1. The Religious Freedom Restoration Act

The Supreme Court's decision in *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, "virtually eliminated the requirement that government justify burdens on religious exercise imposed by laws neutral towards religion." 42 U.S.C. § 2000bb(a). In response to this decision, Congress passed RFRA which directs "governments [to] not substantially burden religious exercise without compelling justification," 42 U.S.C. § 2000bb(a)(3):

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it dem-

onstrates that application of the burden to the person-

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb–1.

The purpose of the Act is "to restore the compelling interest test of *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b).

 To arrive at this test now mandated by RFRA, the Supreme Court considered the decision of South Carolina to deny unemployment benefits to a Seventh-day Adventist fired for refusing to work on her Sabbath. *See Sherbert*, 374 U.S. at 407, 83 S.Ct. 1790. In finding the actions of South Carolina unconstitutional, Justice Brennan reasoned that the asserted governmental interest—deterring unscrupulous claimants feigning religious objections to Saturday work—did not meet the high standard of compelling governmental interest. *See Sherbert*, 374 U.S. at 407, 83 S.Ct. 1790. For "[t]his holding ... reaffirms a principle that we announced a decade and a half ago, namely that no State may 'exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, because of their faith, or lack of it, from receiving the benefits of public welfare legislation.'" *Sherbert*, 374 U.S. at 410, 83 S.Ct. 1790 quoting *Everson v. Board of Education*, 330 U.S. 1, 16, 67 S.Ct. 504, 512, 91 L.Ed. 711. Later, the Supreme Court reviewed the decision of the Wisconsin Supreme Court, which had overturned the convictions of three Amish parents who re-

fused to send their children to school beyond the eighth grade. *See Yoder*, 406 U.S. at 207–10, 92 S.Ct. 1526. Chief Justice Burger affirmed the decision of the state's highest court and agreed that the asserted state interest in preparing self-reliant citizens for participation in society was uncompelling. Notably, especially in light of the case at hand, the Supreme Court carefully distinguished, in both *Sherbert* and *Yoder*, cases which implicated the government's paramount interest in the protection of the physical or mental health of its citizens, public safety, or public welfare. *See Sherbert*, 374 U.S. at 403, 83 S.Ct. 1790; *Yoder*, 406 U.S. at 230, 92 S.Ct. 1526. The government's paramount interest, absent from both *Sherbert* and *Yoder*, is present here. Furthermore, while the freedom to hold religious beliefs is absolute, the freedom to act in accord with one's religious convictions is not. *See Sherbert*, 374 U.S. at 402–403, 83 S.Ct. 1790; *Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15. The government may burden an individual's free exercise of religion, if it has a compelling state interest. *Sherbert*, 374 U.S. at 406, 83 S.Ct. 1790; *Yoder*, 406 U.S. at 220–221, 92 S.Ct. 1526.

### a. The Compelling Governmental Interest

 Accepting the religious beliefs of the witnesses as such,[1] the government's interest and need to conduct criminal investigations overrides the burden on religious beliefs here. "It is virtually axiomatic that criminal investigations and prosecutions are an essential part of public safety and effective governance." *Mem. in Opp. to Motion to Quash and in Support of Gov't's Mot. to Compel and for Contempt*, at 6. And within that scheme of effective governance the grand jury "plays an important role." *Branzburg v. Hayes*, 408 U.S. 665, 687–88, 92 S.Ct. 2646,

---

[1] **This is a generous assumption considering that the Jewish tenet seems to apply only in Jewish Courts, and the Three Children extrapolate from that tenet a privilege in this secular Court.** Moreover, this claim of religious privilege appears disingenuous because it was raised for the first time, approximately two months after the Three Children knew they had been subpoenaed to testify and only after the government persisted in seeking their testimony. The government and counsel for the Three Children had many occasions to converse regarding the appearance of the Three Children before the grand jury. It seems to this Court that the Three Children would have asserted this privilege earlier if testifying before the federal grand jury against their parent is such a substantial burden and interference with a tenet or belief central to their religious doctrine.

33 L.Ed.2d 626 (1972). The *Branzburg* Court required reporters to testify before the grand jury despite their claims of First Amendment privilege. It relied on the long-standing principle that the "public has a right to every man's evidence ... is particularly applicable to grand jury proceedings" because the grand jury's authority to subpoena witnesses is "essential to its task." *Id.; Trammel v. United States,* 445 U.S. 40, 50–51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950).

Here, the Three Children move for a testimonial exclusionary rule which conflicts greatly with the societal right that the public has a right to hear from "every man." *See Branzburg,* 408 U.S. at 688, 92 S.Ct. 2646. They must overcome great hurdles to justify the exclusion of their testimony. As illustration, the Supreme Court in *Trammel* admonished that "testimonial exclusionary rules and privileges must be strictly construed and accepted only to the very limited extent that permitting refusal ... has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Trammel,* 445 U.S. at 50–51, 100 S.Ct. 906; *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting).

Again, assuming the religious tenet as interpreted by the Three Children, this Court finds that the government's interest in investigating and successfully prosecuting crimes, which invariably includes taking the grand jury testimony of witnesses, far outweighs the incidental burden on the professed free exercise of religion in this matter. The government should be able to obtain testimony from the Three Children about their roles and responsibilities as employees of their parent, as well as testimony about any other matter relevant to the underlying investigation. That the government should investigate suspected criminal wrongdoing is essential and implements its paramount responsibility for the general safety and welfare of all its citizens.

### b. Less Restrictive Alternatives

Under section B(1) of RFRA, the government has the burden of proving that no less restrictive alternative exists. *See Diaz v. Collins,* 114 F.3d 69 (5th Cir.1997); *May v. Baldwin,* 109 F.3d 557 (9th Cir.) *cert. denied,* — U.S. —, 118 S.Ct. 312, 139 L.Ed.2d 241 (1997); *United States v. Meyers,* 95 F.3d 1475 (10th Cir.) *cert. denied,* — U.S. —, 118 S.Ct. 583, 139 L.Ed.2d 421 (1997); *but see, Hamilton v. Schriro,* 74 F.3d 1545 (8th Cir.1996) (concluding that, where government provides prima facie evidence of least restrictive alternative, the prisoner must then demonstrate what, if any, less restrictive alternatives remain unexplored). This Court finds that the government has met its burden. No less restrictive alternative exists for the government to discover the relevant information that the Three Children possess from their unique position as both employees and children of the target.

### Conclusion

For the reasons stated above, the motion by the Three Children to quash the subpoena is denied. The government's motion to compel testimony is granted.

**SO ORDERED.**

### ORDER

This matter comes before the Court on the motion of counsel for the Three Children to quash the subpoenas against them. Upon consideration of oral argument and the submissions of the parties and for the reasons stated in the accompanying opinion, it is on November, 1998:

ORDERED that the motion to quash the subpoenas is denied;

ORDERED that the government's motion to compel the testimony of the Three Children is granted.