**Rickey E. BELL**

v.

**Richard L. STALDER, et al.**

**No. Civ.A. 00–1173A.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

June 15, 2000.

this court grant him a temporary restraining order or preliminary injunction preventing the defendants [1] from forcibly cutting his hair, arguing that the cutting of his hair would be an infringement upon his religious beliefs [2] in violation of the First Amendment. In an order signed on 18 May 2000, this court denied Bell's request for a temporary restraining order but granted a preliminary injunction hearing at which Bell would have an opportunity to present evidence to support his claim for injunctive relief. The hearing took place at the scheduled time and place, and we now rule on the merits of this case.

After careful consideration of both the plaintiff's and the defendants' arguments in this case, this court finds that the hair length policy recently instated at WCC is related reasonably to legitimate penological concerns and, therefore, is not unconstitutional. The policy in question is a departmental-wide policy set by defendant Stalder in an effort to maintain a uniform policy among all prisons within the State of Louisiana, and it serves the dual purposes of security and inmate identification.

Rickey Earl Bell, Winnfield LA, plaintiff pro se.

Ronald E. Corkern, Jr., Corkern & Crews, Natchitoches, LA, for Richard L. Stalder, defendant.

### *RULING*

LITTLE, Chief Judge.

A hearing was held in Alexandria, Louisiana at 9:30 a.m. on 5 June 2000 regarding the recently instated hair length policy at Winn Correctional Center that would require plaintiff Rickey E. Bell ("Bell"), an inmate with hair longer than a few inches, to cut his hair. Bell had requested that

While we truly empathize with Bell, who believes that his religion forbids the cutting of his hair either voluntarily or involuntarily, we find that the penological interests involved herein override Bell's position and justify the implementation of the policy in question. We first address the security concern. Long hair poses security problems in prisons because contraband, such as weapons or drugs, may be concealed in the hair. Concealed weapons, in particular, endanger the safety of anyone within the prison facility. The policy, therefore, protects not only the correctional officers but also the inmates. Moreover, long hair requires more time

1. The named defendants in this case are Richard L. Stalder, Secretary of the Louisiana Department of Public Safety and Corrections; Warden Mickey L. Hubert; Raymond Byrd; Angel Martin; Todd Thomas; Arthur Lee; and Patrick Craig. All defendants, except Stalder, are employed at Winn Correctional Center ("WCC") in Winnfield, Louisiana.

2. Bell testified that he is of the Islamic faith.

and effort to search than short hair. That additional time spent by correctional officers is unnecessary—arguably even a waste of prison resources—and takes away from the officers' ability to take other security measures.

We next address the second main purpose of the hair length policy, that regarding inmate identification. According to the defendants, a photograph is taken of every inmate who enters the prison system. That photo is kept in the inmate's file with the particular prison at which the inmate is incarcerated. If an inmate escapes, his photo in his file is reproduced and distributed widely to law enforcement authorities and perhaps even the community at large. It is with that photo that a search is conducted of the escapee.

It is much easier to change one's physical appearance with long hair than with short hair. In the event of an escape, an inmate with long hair can cut his hair any one of various lengths to change his appearance and reduce the risk of getting caught. Even an inmate with a religious conviction against cutting hair, such as our plaintiff, may change his physical appearance simply by styling his long hair in one of countless different ways. Long hair, therefore, is disadvantageous from a law enforcement standpoint not just because it can be cut but also because it can be styled in different ways to change one's appearance.[3] In sum, for either of the purposes discussed, the policy in question is related reasonably to legitimate penological concerns.

Moreover, we find that the defendants' proposal of a maximum hair length of two or three inches is reasonable. It is not as if inmates at WCC are required to shave off all their hair; they simply must keep their hair no longer than two or three inches, which is about the length of a standard short cut. Such length is objectively reasonable and does not impose an undue burden upon inmates, whose rights and privileges necessarily are more limited as a result of lawful incarceration. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

Our ruling in this case is wholly consistent with Fifth Circuit jurisprudence. The Fifth Circuit has held repeatedly that prison grooming regulations, including the requirement that an inmate keep his hair cut short, are related reasonably to legitimate penological interests, such as security and identification. *See, e.g., Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir.1997) (despite strong significance of long hair in defendant's belief, prison regulation on hair length did not violate Religious Freedom Restoration Act and was related to compelling state interest of security); *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 80 (5th Cir.1992); *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir.1976); *Brooks v. Wainwright*, 428 F.2d 652, 653–54 (5th Cir. 1970).

Although plaintiff Bell has served approximately twelve years in prison and has only fourteen months remaining, he cannot be exempt from the policy. There are over 1500 prisoners incarcerated at WCC; approximately 400 of them are released over the course of the year. Defendant Warden Hubert testified that it would be very burdensome, if not impossible, to keep track of each inmate's release date. The reason is that circumstances may vary widely. Some inmates are released on parole, while others are not. Some gain

---

3. It clearly would not be feasible to take numerous photographs of each inmate, one for every possible hair length or hairstyle, to put in the inmate's file and retrieve in the event he escapes from prison. Those numerous photographs, in turn, would have to be reproduced for mass distribution to law enforcement authorities and the public. There simply would be too many photos to juggle; the

photos would be not only unhelpful but confusing. And multiplying that number of photographs by the number of inmates who desire to grow their hair either now or in the future, one can see how very inefficient the system may become. The whole purpose of having a match up photo in each inmate's file would be defeated.

"good time credit" toward early release; some others lose such credit. Some even may be transferred to a different prison facility. Indeed, it would not be feasible to require prison authorities to keep track of each inmate's situation and enforce prison regulations only against those who, with certainty, will not be released in the near future. It is hard to determine where to draw the line, and any line drawn undoubtedly will seem arbitrary to some. More importantly, however, we must not forget why prison regulations are enforced uniformly against *all* inmates in the first place: Prison-wide policies ensure equal treatment of inmates and make enforcement much easier, as everybody is required to follow the same rules.

In conclusion, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In this case, the hair length policy at WCC is related reasonably to the legitimate penological interests of security and inmate identification. We, therefore, find that such policy is not unconstitutional and may be applied as to all inmates at WCC, including plaintiff Bell.