# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 14-40339

————

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2016

Lyle W. Cayce
Clerk

TEDDY NORRIS DAVIS; ROBBIE DOW GOODMAN,

> Plaintiffs - Appellants

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice Correctional Institutions Division; CLINT MORRIS, Program Analyst,

> Defendants – Appellees

_____

TEDDY NORRIS DAVIS,

> Plaintiff – Appellant

v.

LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

> Defendant - Appellee

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before SOUTHWICK and COSTA, Circuit Judges and OZERDEN,* District Judge.

HALIL SULEYMAN OZERDEN, District Judge:

_____

* District Judge of the Southern District of Mississippi, sitting by designation.

No. 14-40339

Prisoner Plaintiffs Teddy Norris Davis and Robbie Dow Goodman appeal the district court's grant of summary judgment in favor of prison officials within the Texas Department of Criminal Justice ("TDCJ"). The district court granted summary judgment in Defendants' favor on Plaintiffs' First Amendment and 42 U.S.C. § 1983 claims challenging TDCJ policies on the wearing of medicine bags, the use of pipes during Native American religious pipe ceremonies, and grooming, based on the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. We AFFIRM in part as to the First Amendment claim and RLUIPA claims concerning medicine bags and pipe ceremonies, and we VACATE and REMAND in part for further findings as to Plaintiffs' grooming-policy RLUIPA claim.

## I.  BACKGROUND

Teddy Norris Davis, Texas prisoner #807688, is housed in the TDCJ's McConnell Unit in Beeville, Texas. On May 21, 2012, Davis filed a pro se 42 U.S.C. § 1983 complaint alleging that the meaningful practice of his religion was being burdened by five Defendants employed by the TDCJ. A follower of the Native American religious path, Davis challenged three TDCJ policies. Specifically, Davis alleged that TDCJ policies burdened the exercise of his religious beliefs by preventing him from (1) smoking a prayer pipe during Native American pipe ceremonies, (2) wearing a religiously significant "medicine bag" other than within his cell and to and from religious ceremonies, and (3) growing long hair or alternatively, a kouplock, which is "a one inch square section of hair at the base of the skull." Davis argued that these three policies violated his rights under RLUIPA and the First Amendment, and that the grooming policy further violated his right to equal protection, because female inmates were allowed to wear their hair long.

2

No. 14-40339

Robbie Dow Goodman, Texas prisoner #758386, is also housed in the McConnell Unit in Beeville, Texas, and joined this suit, claiming that he follows the Native American faith and has experienced the same deprivations as Davis. Davis and Goodman ("Plaintiffs") both purport to be non-violent, low security risk, or G2, custody level inmates.

Plaintiffs filed an Amended Complaint on February 11, 2013, and subsequently consented to proceed before a United States Magistrate Judge. At a hearing before the Magistrate Judge, Plaintiffs voluntarily dismissed all of their claims except their three RLUIPA challenges, which sought injunctive and declaratory relief against Rick Thaler, the TDCJ Correctional Institutions Division Director in his official capacity, and their First Amendment claim seeking damages against Clint Morris, a TDCJ Program Analyst. On July 1, 2013, after Thaler retired, William Stephens was substituted as a Defendant.[1]

On July 8, 2013, Defendants filed a Motion for Summary Judgment, and on July 10, 2013, Defendants filed a Supplemental Motion for Summary Judgment. Plaintiffs filed a Cross-Motion for Summary Judgment on July 19, 2013.

On February 27, 2014, the district court issued its Opinion and Order on Cross-Motions for Summary Judgment ("Opinion and Order"), and Final Judgment was entered in Defendants' favor. The district court found that both Plaintiffs were sincere practitioners of the Native American faith and that the policies complained of constituted a substantial burden on their religious exercise. The Court concluded, however, that Defendants had demonstrated that the challenged prison regulations were the least

---

[1] William Stephens has retired. On May 5, 2016, the new Director of the Texas Department of Criminal Justice Correctional Institutions Division, Lorie Davis, was substituted as Appellee in this case.

restrictive means of furthering compelling governmental interests. This appeal followed.

## II.  STANDARD OF REVIEW

### A.    Summary Judgment Standard

"This court reviews de novo a district court's order granting a defendant's motion for summary judgment, applying the same standard as did the district court." *Toney v. Owens*, 779 F.3d 330, 335 (5th Cir. 2015).  A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is axiomatic that the "'evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine dispute of material fact is not created by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation marks and citation omitted).

### B.    The RLUIPA

RLUIPA provides, in relevant part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

>   (A) is in furtherance of a compelling governmental interest; and

>   (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a

system of religious belief." § 2000cc-5(7)(A). Under RLUIPA, Plaintiffs carry an initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of their religion. *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). Once Plaintiffs make this showing, Defendants bear the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Id.*; *see also Sossamon v. Texas*, 563 U.S. 277, 281 (2011). Defendants' burden "is not to show that it considered the claimant's proposed alternatives but rather to demonstrate those alternatives are ineffective." *Ali v. Stephens*, No. 14-41165, 2016 WL 1741573, at *6 (5th Cir. May 2, 2016).

Congress enacted RLUIPA to address "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, but expected courts entertaining RLUIPA challenges to also "accord 'due deference to the experience and expertise of prison and jail administrators.'" *Cutter v. Wilkinson*, 544 U.S. 709, 716–17 (2005) (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on RLUIPA)). Religious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723. Costs, limited resources, and prison security are all compelling state interests. *Id.* However, deference is not unlimited and "'policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements.'" *Rich v. Sec'y, Florida Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (quoting S. Rep. No. 103–111, at 10, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1900) (discussing the Religious Freedom Restoration Act, predecessor to RLUIPA); *see also Holt v. Hobbs*, 135 S. Ct. 853, 867 (2015) ("Indeed, prison policies

'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA.").

The least-restrictive-means standard is "exceptionally demanding, and requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864 (quotation omitted and alteration adopted). The Government must also demonstrate that the "compelling interest test" is satisfied when applying the challenged law to the "particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 863 (quotation omitted). Thus RLUIPA requires a court to scrutinize "'the asserted harm of granting specific exemptions to particular religious claimants'" and look "'to the marginal interest in enforcing' the challenged government action in that particular context." *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014)).

## C.    The First Amendment

The First Amendment to the United States Constitution is violated when prisoners are not afforded "reasonable opportunity" to exercise their religious beliefs. *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). The First Amendment applies to State prisons by virtue of the Fourteenth Amendment. *Id.*

Prison officials may still place reasonable limits on the religious rights that must be afforded to inmates. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. Courts consider four factors in determining the reasonableness of a regulation: (1) the existence of a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the existence of

alternative means of exercising the right that remain open to prison inmates; (3) the impact an accommodation will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of alternatives. *Id.* at 89–91.

*Turner*'s "rational connection" standard for assessing First Amendment claims provides less protection against prison regulations that impinge on inmates' free exercise of religion than does RLUIPA's more demanding compelling-interest/least-restrictive-means standard. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004).

## III.  DISCUSSION

Plaintiffs challenge whether summary judgment was properly granted in favor of the TDCJ Defendants as to their (1) First Amendment claim, (2) medicine-bag RLUIPA claim, (3) pipe-ceremony RLUIPA claim, and (4) grooming-policy RLUIPA claim.  We find no error in the district court's grant of summary judgment on the first three issues, but will vacate and remand for further findings as to the grooming-policy RLUIPA claim.

### A.    First Amendment Claim and Medicine-Bag RLUIPA Claim

On appeal, Davis and Goodman only briefly mention their First Amendment claim and medicine-bag RLUIPA claim.  Issues submitted to this Court that are inadequately briefed are considered abandoned.  *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).  Plaintiffs' arguments as to these two issues are entirely conclusory, and Davis and Goodman have not demonstrated that the district court erred in granting summary judgment for Defendants on the First Amendment claim or medicine-bag RLUIPA claim.

#### 1.    First Amendment Claim

The district court determined that Defendant Morris was entitled to qualified immunity because Plaintiffs had not established that their First Amendment rights to exercise their religion had been violated.  Since

No. 14-40339

qualified immunity depends upon whether a defendant violated a clearly established constitutional right, the preliminary inquiry is whether the plaintiff can establish a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The district court concluded that the challenged regulations and practices were rationally connected to valid government interest, and did not violate the First Amendment. In this Court, Davis and Goodman merely state, in a single paragraph and without elaboration, that "[t]he evidence is clear that the Appell[ants] have indeed established a First Amendment Constitutional violation thereby clearly overcoming the Qualified Immunity Analysis [sic]." Plaintiffs have not raised any other arguments or offered further explanation as to how the district court erred.

2.    Medicine-Bag RLUIPA Claim

The district court found that the TDCJ restrictions on wearing the medicine bag were the least restrictive means of furthering a compelling interest in security and controlling costs. Before this Court, Davis and Goodman do not contest this conclusion, merely stating in their brief that "it may very well be that the defendants are right." Plaintiffs object only to the district court's finding that TDCJ's restrictions "are appropriate as a matter of law on this record," but Plaintiffs do not clarify how the record could be seen as deficient. It appears that Defendants presented evidence that the medicine-bag policy furthers an interest in security and costs, and Plaintiffs did not present competent summary judgment evidence to rebut this assertion.

Since Davis and Goodman have not adequately briefed or otherwise identified any legitimate points of error as to the First Amendment claim and medicine-bag RLUIPA claim, summary judgment will be affirmed as to these issues.

8

## B.    Pipe-Ceremony RLUIPA Claim

Plaintiffs challenge the TDCJ ban on inmates personally smoking a prayer pipe during pipe ceremonies.[2]    TDCJ's official "Procedures for Religious Programming," as revised in 2012, state that  "[o]nly the Native American chaplain/volunteer is authorized to smoke the pipe used for the pipe service."   Davis and Goodman claim that having a Native American chaplain smoke the ceremonial prayer pipe for them is insufficient, yet they also do not want to use a communal prayer pipe due to the risk of disease. Instead, Plaintiffs propose that they each be allowed to purchase their own personal prayer pipes from an approved vendor.[3]

Plaintiffs' suggestion that inmates be allowed to possess personal prayer pipes has already been considered and rejected by this Court.  *Chance v. Texas Dep't of Criminal Justice*, 730 F.3d 404, 412–13 (5th Cir. 2013).  In 2011, a TDCJ Native American prisoner, William Chance, requested permission to possess a personal pipe because he suffered from hepatitis C and tuberculosis and wished to avoid smoking from the communal pipe used in pipe ceremonies.  *See Chance v. TDCJ*, Case No. 6:11-cv-435 (E.D. Tex. June 16, 2011) (Compl.).  The *Chance* litigation prompted TDCJ officials to re-examine the policy concerning pipe ceremonies in light of these serious health concerns.   After conducting a study, TDCJ concluded that going forward only the Native American chaplain performing the pipe ceremony

---

[2] In the district court, Davis and Goodman also challenged the frequency of Native American ceremonies under RLUIPA.   The Magistrate Judge concluded that the TDCJ volunteer chaplain policy was the least restrictive means of furthering Defendants' compelling interest in prison administration.  This issue has not been raised on appeal.

[3]  Davis and Goodman also claim that TDCJ never considered the use of the herb "cansasa" in the pipe ceremony as a least restrictive means.  Because the TDCJ policy does not allow inmates to smoke their own personal prayer pipe for other reasons such as health, cost, and security concerns, the substance being smoked is irrelevant to the RLUIPA analysis in this case and consideration of tobacco alternatives is unnecessary.

could smoke the prayer pipe during Native American pipe ceremonies. The TDCJ Chaplaincy Manual was revised in July 2012 to reflect this change.

The district court in *Chance* granted summary judgment for TDCJ on the pipe-ceremony issue. This Court affirmed and held that TDCJ had carried its burden of demonstrating that the policy banning communal and individual pipes and allowing only the ceremony leader to smoke the pipe at ceremonies was the least restrictive means of furthering compelling government interests in "prison health, administration, and security," and, accordingly, did not violate RLUIPA. *Chance*, 730 F.3d at 407–08.

In *Chance*, this Court considered the option of permitting every prisoner to purchase and smoke his own pipe, and Davis and Goodman do not present any new or different arguments from those previously considered. *See id.* at 413. In this case, both TDCJ and the district court considered allowing inmate-owned pipes to be stored in the chaplain's office, but logistical, health, and security concerns outweighed the need for a religious accommodation. As to this issue, the district court's grant of summary judgment will be affirmed.

## C.    Grooming-Policy RLUIPA Claim

We will, however, vacate the grant of summary judgment on the grooming-policy RLUIPA claim for two reasons. First, the record does not reflect whether appropriate consideration was given to Plaintiffs' summary judgment evidence. Second, there is a need for further findings under the standard for evaluating RLUIPA claims as discussed in *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015), because Plaintiffs' RLUIPA claims must be evaluated on remand in light of the security risk presented by Plaintiffs as individuals.

1.    Plaintiffs' Summary Judgment Evidence

Plaintiffs contend that the district court did not give proper consideration to their summary judgment evidence on the grooming-policy

RLUIPA claim.  A nonmovant's evidence on summary judgment "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Cotton*, 134 S. Ct. at 1863.  Plaintiffs attempted to present evidence at summary judgment by retyping or referencing portions of a TDCJ official's testimony and the expert testimony of George Sullivan[4] from an earlier bench trial in another Native American inmate's lawsuit challenging the TDCJ grooming policy.  Within their reply brief on summary judgment, Defendants moved to strike this evidence.  However, the district court did not rule on their request.

Because the motion to strike was included in Defendants' reply brief and not docketed as a separate motion, it is unclear whether the district court overlooked the motion or decided not to rule on it on grounds that it was not properly asserted.  In any event, Sullivan's expert testimony was before the district court when it granted summary judgment, but the district court made no mention of it.

Sullivan's testimony was taken from an earlier bench trial in *Odneal v. Dretke*, 2:4cv454 (S.D. Tex. filed Aug. 30, 2004), and may be relevant in this case, because *Odneal* involved claims similar to those presented here.  In *Odneal*, Shawn Odneal, a male inmate also housed in the McConnell Unit, challenged the insufficient frequency of pipe ceremonies and other Native American religious ceremonies.  *See Odneal v. Dretke*, 435 F. Supp. 2d 608, 610–11 (S.D. Tex. 2006) ("*Odneal I*").  Odneal claimed to have learned about the spiritual path of the Native American people from one of the Plaintiffs in this case, Teddy Davis.  *See Odneal v. Pierce*, C.A. No. C-04-454, 2010 WL 3359535, at *2 (S.D. Tex. Aug. 20, 2010) ("*Odneal II*").  Both Davis and

---

[4] George Sullivan is an experienced prison official who has worked with Native American populations in prisons in Oregon and Colorado.

Goodman attempted to join Odneal's case in 2004, but their requests were denied.

Odneal also challenged the TDCJ policy on wearing of medicine bags, and sought permission to grow long hair or wear a kouplock. *Odneal I*, 435 F. Supp. 2d at 611 (challenging essentially the same policies as those at issue in this litigation). The district court dismissed Odneal's claims regarding wearing a medicine bag and growing long hair, reasoning that TDCJ policy on medicine bags was rationally connected to security interests pursuant to *Turner*, 482 U.S. at 89–91, and the long-hair claim was foreclosed by *Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir. 1997). The district court also granted summary judgment against Odneal on his claim concerning the insufficient frequency of religious ceremonies. *Odneal I*, 435 F. Supp. 2d at 622.

In an unpublished per curiam opinion, this Court affirmed the grant of summary judgment as to the pipe-ceremony claims, but remanded the medicine-bag and long-hair issues to the district court for further development of the evidentiary record. *Odneal v. Pierce*, 324 F. App'x 297, 302 (5th Cir. 2009) ("*Odneal appeal*"). As to the medicine-bag RLUIPA claim, this Court held that the district court had applied the wrong standard in analyzing the medicine-bag claim by utilizing the rational-connection/legitimate-government-interest test rather than RLUIPA's more demanding compelling-interest/least-restrictive-means test. As to the grooming-policy RLUIPA claim, this Court reasoned that cases, such as *Diaz*, involving long hair generally do not necessarily foreclose a prisoner's claims involving kouplocks, which may have unexplored distinctions in the area of security risks. *Id.* at 301 (distinguishing *Diaz*, 114 F.3d at 72).

On remand, Odneal was appointed counsel and abandoned his medicine-bag claim, proceeding to trial only on the long-hair/kouplock issue. *Odneal II*, 2010 WL 3359535, at *2. TDCJ officials produced evidence that

kouplocks could present security challenges for inmate identification and provide a place for hiding contraband. *Id.* at *6. Odneal countered this evidence with the testimony and expert report of George Sullivan, an experienced prison official who has worked with Native American populations in prisons in Oregon and Colorado. *Id.* Sullivan testified that kouplocks do not present security issues and are not practical places for hiding contraband. *Id.* at *7. Based on Sullivan's testimony, the district court denied summary judgment, finding that there were genuine issues of material fact as to whether the policy prohibiting Odneal from wearing a kouplock served a compelling interest, and was the least restrictive means of achieving that interest. *Id.* at *8.

Odneal's kouplock claim proceeded to a two-day bench trial held on December 13–14, 2010. *See Odneal v. Pierce*, C.A. No. C-04-454, 2011 WL 2678940, at *1 (S.D. Tex. July 7, 2011) ("*Odneal III*"). Before the district court could issue a ruling, TDCJ transferred Odneal to a Minnesota prison where he would be permitted to grow his hair. *Id.* at *2. Thus, the kouplock issue became moot and remained undecided.

Here, Plaintiffs purported to present summary judgment evidence to rebut prison officials' testimony by retyping and citing George Sullivan's expert testimony from Odneal's bench trial. The district court's opinion on summary judgment does not reflect what consideration, if any, was given to Plaintiffs' summary judgment evidence.[5] The district court briefly discussed the Odneal appeal in a footnote and concluded that "the Odneal case has

---

[5] Davis and Goodman also contend that the district court failed to consider their post-judgment Reply to Defendants' Reply to the Motion for Summary Judgment. However, in denying Plaintiffs' Rule 59(e) Motion for Reconsideration of the Court's Opinion and Order, the Magistrate Judge indicated that she took into account the post-judgment Reply and found no basis for overturning summary judgment.

little or no bearing on the case *sub judice*." Despite the district court's finding in *Odneal II* that Sullivan's expert testimony created genuine issues of material fact on the kouplock claim, 2010 WL 3359535, at *8, the district court's analysis of Plaintiffs' kouplock claims in this case was limited to one paragraph and did not discuss Sullivan's testimony, which had not been stricken. Instead, the district court stated that Defendants' summary judgment evidence was "uncontroverted."

Given the posture of the case at summary judgment, Defendants' evidence regarding the kouplock issue was not plainly uncontroverted. Plaintiffs had typed verbatim, and referenced portions of, testimony by witnesses from Odneal's bench trial to support their grooming-policy claim. Plaintiffs also informed the Magistrate Judge of their desire to use this testimony during an evidentiary hearing held on June 21, 2012. At that hearing, the Magistrate Judge indicated that the law might permit this evidence to be used against TDCJ, but that its admissibility would be determined at a future time. It appears from the record that such a determination was never made.

As an additional reason that we cannot conclude the evidence was not before the district court, the record indicates that Plaintiffs, as pro se prisoner litigants, were permitted some leeway in the form of documents that could be submitted. In another order entered on December 20, 2013, the district court responded to Plaintiffs' request for copies of pleadings by stating that Plaintiffs could "hand copy all documents sent to the Clerk." That order specifically dealt with maintaining Plaintiffs' own files of documents sent to the district court, but could reasonably have been construed by Plaintiffs as an invitation to make hand-written facsimiles when necessary for filing with the district court. Among the grounds argued in Defendants' motion to strike Sullivan's testimony was Plaintiffs' failure to

attach the relevant portions of the actual transcript from which the typed copy was made. However, in light of the December 20, 2013, order referencing the hand-copying of materials, it is not clear that the district court would have discounted Plaintiffs' summary judgment evidence merely for reasons of form.

In substance, it is also unclear why Plaintiffs' summary judgment evidence would not be relevant to the district court's decision. In Odneal's case, summary judgment was denied and the district court found genuine issues of material fact remained on facts and evidence similar to those presented by Plaintiffs in this case. *Odneal II*, 2010 WL 3359535, at *8. While RLUIPA "suggests a fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison," *see Chance*, 730 F.3d at 410, this case and *Odneal* involved the same unit within the same prison and prisoners with substantially similar characteristics raising similar challenges to the TDCJ grooming policy. As such, evidence developed in Odneal's case could be relevant in the present suit, even under the individualized inquiry standard.

If Plaintiffs' expert testimony evidence was not credited because the Magistrate Judge found it inadmissible or improper, the record does not reflect this determination. Were the district court to have made a considered decision that evidence from Odneal's bench trial was not relevant or should be stricken from the record, or otherwise discussed the evidence presented in a meaningful way, the decision to grant summary judgment on this issue might ultimately have been supported. However, the current record does not reflect whether the Magistrate Judge considered Plaintiffs' evidence and drew reasonable inferences in their favor, as is required in deciding a motion for summary judgment. *Cotton*, 134 S. Ct. at 1863. Remand for further consideration of this issue is warranted.

No. 14-40339

2.    *Holt v. Hobbs* and Plaintiffs' Particular Characteristics

The grooming-policy RLUIPA claim should also be remanded because the district court did not appear to consider Plaintiffs' specific, individual status as low custody level inmates in relation to their theory that the grooming restrictions are unnecessary as applied to them.    Davis and Goodman argue that the district court's opinion does not reflect that consideration was given to their specific security risk status, which they assert was low, in determining whether disallowing a kouplock substantially burdened their religious exercise by the least restrictive means.[6]

The Supreme Court has explained that RLUIPA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 135 S. Ct. at 863 (quoting *Hobby Lobby*, 134 S. Ct. at 2779) (quotation marks omitted).

In *Holt*, 135 S. Ct. at 853, the Supreme Court considered a RLUIPA challenge to the Arkansas Department of Corrections' no-beard policy.    The policy prohibited inmates from wearing facial hair other than a "neatly trimmed mustache."    *Id.* at 860.    The policy made no religious exceptions, but did allow inmates with diagnosed dermatological conditions to wear a ¼-inch beard.    *Id.*    In accordance with his Muslim faith, Gregory Holt sought permission to grow a ½-inch beard.    *Id.* at 859, 861.    Holt's request was denied, and he filed suit under RLUIPA.    *Id.* at 861. Following an evidentiary

---

[6] On appeal, Davis and Goodman also claim that the district court erred in failing to consider the option to house all low security risk Native American inmates in one unit and allow long hair or a kouplock only on that unit.    It does not appear that this argument was raised in the district court.    This Court does not "consider arguments or evidence that was not presented to the district court."    *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008).

16

hearing, the district court dismissed Holt's RLUIPA complaint for failure to state a claim, and the Eighth Circuit affirmed. *Id.* The Supreme Court reversed, holding that the Department's grooming policy violated RLUIPA as applied to Holt. *Id.* at 867.

The Court reasoned that the Department's stated justification for the policy, preventing the flow of contraband, would not be seriously compromised by permitting Holt to grow a ½-inch beard. *Id.* at 863. Similarly, the Court found the Department's interests in prisoner identification and security would not be severely compromised. *Id.* at 865. In reaching this conclusion, the Court noted that permitting a religious accommodation to a grooming policy may still allow prison officials to maintain security because RLUIPA allows an institution "to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests." *Id.* at 867.

Applying *Holt*, another panel of this Court recently affirmed a district court's grant of declaratory and injunctive relief enabling a Muslim TDCJ inmate to grow a four-inch beard and wear his kufi throughout TDCJ's facilities. *Ali*, 2016 WL 1741573, at *1.[7] In doing so, this Court reviewed the district court's findings as to the TDCJ grooming policy and evaluated the evidence supporting TDCJ's concerns over preventing the transfer of contraband, facilitating inmate identification, controlling costs, and ensuring orderly program administration, all of which have been raised as interests in this litigation. *Id.* at *6–13. Examining the specific exemption requested, a four-inch beard, this Court found that TDCJ's ban on the wearing of such a

---

[7] George Sullivan also testified as an expert witness in the *Ali* bench trial that self-searches and visual inspections of longer beards are effective methods for revealing contraband. *Ali*, 2016 WL 1741573, at *8.

17

beard as to Ali was not the least restrictive means of furthering these interests.[8]

In light of *Holt*, TDCJ's asserted compelling interests must be examined in light of the particular characteristics of each Plaintiff, including their alleged low security risk status and the particular risks of the specific exemption requested. 135 S. Ct. at 863. The specific exemption requested here is to allow Plaintiffs to wear long hair or a kouplock. In the district court, TDCJ presented photographs of objects small enough in size to hypothetically be hidden in a kouplock, and evidence that inmates at other institutions hide contraband in various styles of short and long hair, indicating that the grooming policy does further an interest in preventing the transfer of contraband. But TDCJ has not demonstrated on the present record that a total ban on the growing of kouplocks, even as to low security risk inmates such as Plaintiffs, is the least restrictive means of furthering that interest. Were Plaintiffs to be caught using their kouplocks to smuggle contraband or for some other prohibited purpose, any accommodation could be withdrawn. *Id.* at 867; *see also Ali*, 2016 WL 1741573, at \*14 ("TDCJ has not shown why it is impracticable to revoke kufi privileges for those inmates that resist such searches."). In addition, a fact question may be presented on this point based on George Sullivan's testimony that, in his experience, inmates are unlikely to hide contraband in their hair.

Because TDCJ's interests in preventing the wearing of long hair or kouplocks were not evaluated in light of the specific characteristics of each Plaintiff as purportedly low security risk Native American inmates, remand for further findings on this issue is appropriate.

---

[8] The Court began its analysis by noting that Ali "is a 'trusty' inmate, which is the lowest security level classification, and lives in a dormitory outside of the Michael Unit's fence line." *Id.*

No. 14-40339

## IV.   CONCLUSION

The district court did not err in granting summary judgment on Plaintiffs' First Amendment claim, medicine-bag RLUIPA claim, and pipe-ceremony RLUIPA claim.  Because the district court did not strike Plaintiffs' summary judgment evidence, including George Sullivan's expert testimony, and because genuine issues of material fact remain regarding the legitimacy of TDCJ's cost and security concerns created by the wearing of a kouplock by Plaintiffs as low security risk Native American inmates, and further because the district court did not consider Plaintiffs' grooming-policy claim in light of Plaintiffs' individual circumstances, we VACATE and REMAND in part for further proceedings as to Plaintiffs' grooming-policy claim under RLUIPA. We AFFIRM the judgment of the district court in all other respects.

19